**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| STEPHANIE JOHNSON | : |
| 4 Concetta Court | : |
| Little Egg Harbor, NJ 08087 | :   CIVIL ACTION |
| | : |
| Plaintiff, | :   No. _____ |
| | : |
| v. | : |
| | : |
| LITTLE EGG HARBOR SCHOOL | : |
| DISTRICT | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| LITTLE EGG HARBOR TOWNSHIP | : |
| BOARD OF EDUCATION | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| DR. MELISSA MCCOOLEY _in her_ | : |
| _Individual capacity_ | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| LAURA ERBER _in her Individual capacity_ | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| LISA SEMLER _in her Individual capacity_ | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| DARA ROTH _in her Individual capacity_ | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| PAMELA ZELEZNOK _in her Individual_ | : |
| _capacity_ | : |
| 307 Frog Pond Rd. | : |
| Little Egg Harbor, NJ 08087 | : |
| and | : |
| CHRISTINE SNYDER _in her Individual_ | : |
| _capacity_ | : |

307 Frog Pond Rd.                           :
Little Egg Harbor, NJ 08087                 :
                                            :
            Defendants.                     :
_____:

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Stephanie Johnson (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Little Egg Harbor School District, Little Egg Harbor Township Board of Education, Dr. Melissa McCooley, Laura Erber, Lisa Semler, Dara Roth, Pamela Zeleznok, and Christine Snyder (hereinafter collectively referred to as "Defendants," unless indicated otherwise) for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*), First-Amendment protections, and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq.*). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

2

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the District of New Jersey.

5.      Plaintiff is proceeding herein (in part) under the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant Little Egg Harbor Township School District (hereinafter "Defendant District") is a comprehensive community public school district that serves students in pre-kindergarten through sixth grade from Little Egg Harbor Township, in Ocean County, New Jersey.

9.      Defendant Little Egg Harbor Township Board of Education (hereinafter "Defendant Board") is an elected seven-member body comprised of township residents. The role of Defendant Board of is to establish policies and administrative procedures for the school district's daily operation and conduct the business of the school district.  Defendant Board makes important decisions that affect educational programs, the school facilities, and faculty as well.

10.      Both Defendant District and Defendant Board (hereinafter collectively referred to as "Defendant Entities") had oversight and decision-making authority over Plaintiff's employment, including entering into contracts, discipline, approval of FMLA and termination,

such that they should be considered a joint employer for purposes of the instant civil action. Furthermore, Defendant District and Defendant Board both engaged in the discriminatory and retaliatory actions asserted herein that form the basis for this civil action.

11.     Defendant Dr. Melissa McCooley (hereinafter "Defendant McCooley") was at all times herein the Superintendent of Defendant District and part of Defendant Board. Specifically in her role with Defendant Board, Defendant McCooley was and still is a non-voting, advisory member, who provides professional input so that Defendant Board can make informed decisions.

12.     Defendant Laura Erber (hereinafter "Defendant Erber") was at all times herein a voting member of Defendant Board who made important decisions that affected Plaintiff's employment with Defendant Entities, including her FMLA, discipline and termination.

13.     Defendant Lisa Semler (hereinafter "Defendant Semler") was at all times herein a voting member of Defendant Board who made important decisions that affected Plaintiff's employment with Defendant Entities, including her FMLA, discipline and termination.

14.     Defendant Dara Roth (hereinafter "Defendant Roth") was at all times herein a voting member of Defendant Board who made important decisions that affected Plaintiff's employment with Defendant Entities, including her FMLA, discipline and termination.

15.     Defendant Pamela Zeleznok (hereinafter "Defendant Zeleznok") was at all times herein a voting member of Defendant Board who made important decisions that affected Plaintiff's employment with Defendant Entities, including her FMLA, discipline and termination.

16.     Defendant Christine Snyder (hereinafter "Defendant Snyder") was at all times herein a voting member of Defendant Board who made important decisions that affected Plaintiff's employment with Defendant Entities, including her FMLA, discipline and termination.

17.     Defendants Erber, Semler, Roth, Zeleznok, and Snyder are hereinafter collectively referred to as "Defendant Members."[1]

18.     Defendants McCooley, Erber, Semler, Roth, Zeleznok, and Snyder are hereinafter collectively referred to as "Defendant Individuals."

19.     At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

20.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21.     Plaintiff was hired by Defendants on or about September 6, 2018 as a Preschool Paraprofessional working at Robert C. Wood Early Childhood Center.

22.     During her employment with Defendants, Plaintiff was supervised by Principal – Dr. Anne Flynn (hereinafter "Flynn") and Superintendent – Defendant McCooley.

23.     Plaintiff has and continues to suffer from Ulcerative Colitis, a qualifying disability under the ADA, which causes her to suffer from urgent bowel movements, abdominal pain and cramping, fatigue, and nausea (among other debilitating symptoms).

24.     While Plaintiff seeks treatment for her aforesaid disability, she still experiences debilitating symptoms and is still limited (at times) in her ability to control her bowel movements, work, and concentrate.

---

[1] There were two other members on Defendant Board during Plaintiff's employment; however, Plaintiff is not bringing a cause of action against either of them because one of them voted "No" to terminate Plaintiff's employment and the other abstained from voting on Plaintiff's termination in February of 2022 – discussed *infra*.

25.     Towards the end of 2021, Plaintiff began experiencing severe symptoms related to her disability and started taking days off from work to care for and treat for the same.

26.     During this time, Plaintiff was using sick days to cover her absences but was running out of sick days.

27.     Therefore, in or about November of 2021, Plaintiff requested FMLA forms from Cindy Barton (Administrative Building Benefits Secretary – hereinafter "Barton").

28.     Plaintiff submitted the necessary FMLA forms to Barton in December of 2021 but expressed some concerns (1) when she was made aware that other employees aside from Barton were trying to access her medical records; and (2) when she was advised by Flynn to send her medical paperwork to her [Flynn's] secretary.

29.     Plaintiff tried to confirm with Barton whether she was the only one privy to her medical information, but Barton would only advise that all paperwork goes to her.

30.     On or about December 15, 2021 (days after submitting her FMLA paperwork), Plaintiff was subjected to an unannounced Evaluation Observation conducted by Flynn.

31.     The very next day, December 16, 2021, Defendant Board approved Plaintiff's FMLA request.

32.     Plaintiff was not personally notified that she had been approved for intermittent FMLA and was only made aware by reading Defendant Board's meeting minutes and was not given any other notices related to the same.

33.     On or about December 20, 2021, Plaintiff received a copy of the unannounced Evaluation Observation from Flynn with poor remarks, which was clearly done to intimidate Plaintiff into not utilizing her FMLA and/or in retaliation for requesting FMLA leave.

34.    Plaintiff gave her responses to Flynn's aforesaid poor marks; however, her commentary was ignored (and later used against her), and the poor remarks remained on the evaluation.

35.    On or about December 21, 2021, while at work, Plaintiff began experiencing symptoms of her aforesaid serious health condition (for which she was approved to take FMLA – discussed *supra*).

36.    Due to experiencing a flare up of her aforesaid disability on December 21, 2021, Plaintiff attempted to request the ability to leave work at 12:30 (a half day), but Defendant Entities' system that is used to request time off would not let Plaintiff make the request.

37.    Therefore, Plaintiff asked Jackie Harned (Flynn's Secretary – hereinafter "Harned") to enter a half day of FMLA into the system so that she could leave early on December 21, 2021 to care for her disability.

38.    Plaintiff's request to take a half day was approved by Flynn on December 21, 2021, but was then denied by Defendant McCooley, stating that Plaintiff needed to call out before 5:30 in order to take approved FMLA. However, Plaintiff's health conditions can be unpredictable and have sudden onsets, so this is impossible to do.

39.    Because (1) Plaintiff's need to take a half-day on December 21, 2021 related to her serious health condition was an emergency; (2) Respondent's system was not letting Plaintiff request a half day; and (3) Plaintiff was receiving mixed messages as to whether her request take a half-day was approved, Plaintiff reached out to Defendant McCooley using her cell phone while at work because at that specific time, she did not have access to a computer or a school phone.

40.     Plaintiff was ultimately told by Defendant McCooley that her request to take a half-day would not be approved (again because she did not request the time off before 5:30) and Plaintiff was forced to stay at work the rest of the day.[2]

41.     Plaintiff was later informed via email that she allegedly violated school policy on December 21, 2021 regarding personal use of a cell phone while at work.

42.     On January 5, 2022, Plaintiff attended a zoom meeting with Defendant McCooley, Flynn, Nicholas Brown (Former School Business Administrator – hereinafter "Brown"), and Colleen Neil (union representative – hereinafter "Neil"). During this meeting, Plaintiff was informed that she was being placed on a verbal warning for violating School District Policy 4322 – Personal Use of Cell Phone.

43.     However, Plaintiff's cell phone usage on December 21, 2021 was not for personal reasons but was related to leaving work early on FMLA and attempting to get approval to do so, as it was an emergency situation. Therefore, Plaintiff's January 5, 2022 verbal warning was completely pretextual, discriminatory and retaliatory.[3]

44.     On January 21, 2022, Plaintiff attended an in-person meeting with Defendant McCooley, Tina Konyha (union representative – hereinafter "Konyha"), and Erin Lichtenwalner (Special Education Supervisor/Affirmative Action Officer – hereinafter "Lichtenwalner") (hereinafter referred to as the "January 21, 2022 meeting.")

_____

[2] "An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act" 29 C.F.R. § 825.220(a)(1).

[3] *Fleck v. WILMAC Corp.,* 2011 U.S. Dist. LEXIS 54039, at *33 (E.D. Pa. 2011)(any form of potentially unwarranted discipline can constitute unlawful interference or retaliation under the FMLA).

45.     Defendant McCooley started the January 21, 2022 meeting by discussing Plaintiff's FMLA and stating that she was not allowed to leave work "on will" and that it was unreasonable for Plaintiff to think that she can come to work and just leave in an hour (for FMLA reasons).[4]

46.     In response, Plaintiff expressed concerns with Defendant McCooley's statement and the fact that she did not receive specifics on how to use her FMLA (including who, when, and how to request it).

47.     Throughout the January 21, 2022 meeting, Defendant McCooley was extremely nasty, aggressive, and continued to interrupt Plaintiff when she had questions.

48.     Defendant McCooley further alleged during the January 1, 2022 meeting that Marielle Granieri (Confidential Administrative Secretary to the Superintendent – "Granieri") gave her instructions on how to use her FMLA (including who, when, and how to request it) and that such instructions are in school's policies.

49.     Granieri never gave Plaintiff any instructions or notices under the FMLA, as Defendant McCooley alleged in the January 21, 2022 meeting and the school policy that Defendant McCooley was referring to is just the general attendance policy that call outs need to occur before 5:30 and does not make any exceptions for FMLA emergencies.

50.     It was also stated by Lichtenwalner in the January 21, 2022 meeting that it was Plaintiff's obligation to ask for these policies and procedures.

51.     Following the discussion of Plaintiff's FMLA during the January 21, 2022 meeting, Defendant McCooley proceeded to berate Plaintiff with false allegations regarding her

---

[4] It is well established that FMLA leave is permitted for whole days, partial days or medical-related breaks under the FMLA. *See e.g. Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave *in any size increments* and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences).

performance, such as yelling at a substitute during bus duty (an accusation which was developed from a substitute's false *alleged* written statement which was never investigated with Plaintiff first), screaming at Aftercare Counselors, and criticizing the school nurse and Principal.

52.     Plaintiff was also reprimanded during the January 21, 2022 meeting for having a political sign in the vehicle that she drove to school regarding Defendant McCooley's superintendency.

53.     Specifically:

    i.   Defendant McCooley's contract with Defendant District had been renewed by Defendant Board in or about June/July of 2021.

    ii.  Plaintiff is a resident of the township that Defendant District is located in.

    iii. Plaintiff's children previously attended Defendant District while Defendant McCooley was Superintendent.

    iv.  Plaintiff and her husband removed their children from Defendant District in September of 2021 because of Defendant McCooley's decisions regarding Defendant District's education programs and the operations of Defendant District.

    v.   In addition to Plaintiff and her husband, other residents of Little Egg Harbor Township were also upset with Defendant McCooley's contract renewal and posted signs on their yards regarding the same.

    vi.  Plaintiff's husband created a petition for local residents of Little Egg Harbor Township to sign that he intended to eventually present to Defendant Board in hopes that Defendant Board's members would remove Defendant McCooley from the Superintendent position.

vii.   In the window of a vehicle that Plaintiff drove to school during the relevant time period in question was a sign that stated:

Save Little & Pineland Schools

FIRE McCooley

Tell The Board To End Her Contract!

54.   The aforesaid political sign in Plaintiff's vehicle is protected speech under the First Amendment and Plaintiff was acting as a private citizen, rather than a employee when driving the aforesaid vehicle.

55.   When Plaintiff raised her concerns that the January 21, 2022 meeting was being conducted in retaliation for her use of and concerns regarding FMLA, Defendant McCooley again cut Plaintiff off and continued reprimanding her.

56.   At the end of the January 21, 2022 meeting, Defendant McCooley stated that Plaintiff was being issued a RICE notice (suspending her with pay), that she [Defendant McCooley] was going to present everything to Defendant Board, and that she was going to recommend that Plaintiff be terminated.

57.   On January 31, 2022, Plaintiff met with Defendant McCooley, Flynn, Lichtenwalner and Konyha (hereinafter the "January 31, 2022 meeting").

58.   During the January 31, 2022 meeting, Plaintiff was informed that she was being placed on an Action Plan, that the aforesaid Action Plan was in no way "discipline" (as Defendants did not follow the proper disciplinary procedures), and that it was allegedly being issued so Plaintiff could be successful and happy as an employee of Defendants.

59.     The Action Plan itself was completely discriminatory and retaliatory and even made reference to Plaintiff's need to call out in accordance with policy (i.e. that she needed to call out before 5:30) unless there was an emergency.

60.     However, prior to January 31, 2022, the only time that Plaintiff did not call out in accordance with company policy was when she was in an emergency situation related to her FMLA serious health condition. Therefore, it appears that this instruction was given as a means to intimidate Plaintiff from using FMLA in the middle of the day going forward.

61.     Plaintiff was also informed during the January 31, 2022 meeting that, going forward, if there is an emergency related to her aforesaid health condition, Plaintiff could inform Ms. Harned in the office (an instruction never previously given).

62.     Plaintiff was further told by Defendant McCooley during the January 31, 2022 meeting that she was not allowed to reach out to Defendant Board regarding her FMLA – even when she believed her rights were being violated and that if her rights were violated, she needed to complain to a government agency. In response to this instruction, Plaintiff informed Defendant McCooley that she already filed a grievance with the Federal Department of Labor regarding the same.

63.     In addition to discussing Plaintiff's FMLA leave, Defendant McCooley also raised alleged performance concerns that were never presented to Plaintiff during the January 21, 2022 meeting. When Plaintiff raised a concern about the same, Defendant McCooley stated "well I am telling you now."

64.     Immediately after the January 31, 2022 meeting, Plaintiff had an Affirmative Action interview with Lichtenwalner who told Plaintiff that she was an Affirmative Action Officer for the school and that she would present her interview to Defendant Board and Defendant Board

12

would make a decision on the issue (this interview will herein be referred to as the "Affirmative Action Interview").

65.     Plaintiff apprised Lichtenwalner that she was not aware an affirmative action interview/meeting was scheduled but stated that she would attempt to answer Lichtenwalner's questions the best way that she could.

66.     Plaintiff was told by Lichtenwalner during the Affirmative Action Interview that she was being questioned on claims asserted against her but that it was extremely unlikely to result in a disciplinary action against her.

67.     The Affirmative Action Interview started with questions about the aforesaid political sign regarding Defendant McCooley in the vehicle that Plaintiff's drove to work.

68.     While Lichtenwalner stated during the Affirmative Action Interview that she did not have an opinion on the political sign issue, she also already stated during the January 21, 2022 meeting that Plaintiff violated Defendant McCooley's rights by having the political sign in the window. Therefore, the Affirmative Action Interview was clearly not conducted by a neutral party.

69.     In addition to the political sign regarding Defendant McCooley's superintendency, Lichtenwalner also proceeded to bring up other issues regarding Plaintiff, claiming that Plaintiff had conflicts with other employees. Plaintiff responded by explaining that she doesn't have conflicts, but that she has expressed concerns regarding safety issues and unsafe practices by other employees.

70.     Following all of her January, 2022 meetings (discussed *supra*), Plaintiff repeatedly asked Defendants' management to review and remove the aforesaid substitute's false written statement from her file (which was used to reprimand Plaintiff during these meetings); however, both Flynn and Lichtenwalner were unable to provide any clarification about this.

71.     Plaintiff later learned that there was no written statement made by a substitute, even though Defendant McCooley made her believe there was during the January, 2022 meetings.

72.     On February 8, 2022, Plaintiff emailed Defendant McCooley again complaining of her unlawful activities under the FMLA and ADA (described above) and lack of follow-up to certain questions and concerns she had. Plaintiff cc'd members of Defendant Board on this email, as they were Defendant McCooley's direct supervisors.

73.     On February 10, 2022, Plaintiff received a RICE meeting email while she was out on FMLA, but this email did not outline what would be discussed.

74.      On this same day (February 10, 2022), Plaintiff's union field representative also requested that the Action Plan given to Plaintiff on January 21, 2022 be discarded and memorialized as a formal letter because the Action Plan was not a true Corrective Action Plan.

75.     On February 11, 2022, Defendant McCooley responded to Plaintiff's February 8th email and stated that she should not be contacting Defendant Board regarding her concerns of discrimination and retaliation (which was an obvious attempt to try to silence Plaintiff's complaints of discrimination and retaliation and keep Defendant Board in the dark regarding Defendant McCooley's aforesaid unlawful conduct).

76.     Plaintiff replied to Defendant McCooley's February 11, 2022 email and copied Nicholas Brown, Flynn, Defendant Board's Attorney, and six members of Defendant Board again expressing her concerns regarding Defendant McCooley's discriminatory and retaliatory actions.

77.     In her February 11, 2022 email to Defendant McCooley, Brown, Flynn and six members of Defendant Board, Plaintiff inquired as to what was unprofessional with emailing Defendant Board, as they are Defendant McCooley's supervisors, and she needed to address her concerns about Defendant McCooley violating her FMLA rights and being retaliated against by

her in violation of the FMLA (among other concerns). Plaintiff did not receive a response to this email.

78.     Instead, on February 15, 2022, Defendant Board held a public meeting wherein Defendant McCooley recommended Plaintiff's termination.

79.     During the aforesaid February 15, 2022 public meeting, Defendant McCooley referenced Plaintiff's FMLA and the aforesaid political sign regarding Defendant McCooley but failed to mention all the complaints Plaintiff had made about Defendant McCooley violating her rights under the ADA and FMLA. Instead, Defendant McCooley presented an extremely misleading and one-sided narrative to Defendant Board.

80.     Ultimately, Defendant Members voted to terminate Plaintiff's employment.

81.     When voting on Plaintiff's termination, two Defendant Members made negative reference to Plaintiff's FMLA usage (particularly referring to their concern for the children that Plaintiff had been absent from school).

82.     One Defendant Member even questioned, before ultimately voting to terminate Plaintiff's employment, whether she was "out" more than she had been "in" over the last several weeks, to which Defendant McCooley replied "yes."

83.     Based on the foregoing, Plaintiff believe and therefore avers that Defendants committed numerous violations of the ADA, FMLA, and NJ LAD.

**COUNT I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**[1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**
**-Against Defendant Entities-**

84.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85.    Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected her ability to perform some daily life activities (as discussed *supra*).

86.    Plaintiff requested reasonable accommodations under the ADA, including intermittent time off from work.

87.    While Plaintiff was granted intermittent FMLA for her aforesaid disability, she was not properly accommodated, as Defendants refused to allow her to take a half day in January of 2022 when she was having a flare up of her health condition.

88.    In response to apprising Defendants of her aforesaid health conditions and requests for intermittent time off related to the same, Plaintiff was subjected to a discriminatory/retaliatory hostile work environment, including but not limited, unannounced evaluations, negative evaluations, pretextual discipline, rude, demeaning, and condescending treatment, threats of termination, accusatory meetings, and false/misleading information regarding her rights under the FMLA.

89.    Plaintiff complained of that aforesaid discriminatory treatment related to her disability and requests for intermittent medical leave (under the FMLA and ADA), but her complaints were ignored, never investigated, and she was subjected to continued discrimination and increased retaliation.

90.    Plaintiff therefore avers that she was subjected to a discriminatory and retaliatory hostility work environment in violation of the ADA.

91.    On or about February 15, 2022, Plaintiff was ultimately terminated from her employment with Defendants for completely false and pretextual reasons and just days after her last complaint of discrimination/retaliation under the ADA and FMLA.

92.     Plaintiff believes and therefore avers that her known disabilities, perceived disabilities; and/or her record of impairment were motivating or determinative factor[s] in Defendants' decisions to (1) issue her discipline; (2) give her a negative performance evaluation; (3) place her on an Action Plan; (4) and ultimately terminate her employment.

93.     Plaintiff also believes and therefore avers that she was (1) issued discipline; (2) given a negative performance evaluation; (3) placed on an Action Plan; and (4) and ultimately terminated from her employment because of her requests for reasonable medical accommodations and/or her complaints of discrimination and retaliation under the ADA.

94.     These actions as aforesaid constitute violations of the ADA, as amended.

**COUNT II**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**[1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**
**-Against All Defendants-**

95.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT I of the instant Civil Action Complaint, as such actions constitute identical violations of the NJ LAD.

**COUNT III**
**Family and Medical Leave Act ("FMLA")**
**(Interference and Retaliation)**
**-Against All Defendants-**

97.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

98.     Plaintiff was at all times relevant herein deemed eligible and was approved for FMLA by Defendants. At no time did Defendant contest Plaintiff's FMLA eligibility and would be estopped from doing so.

99.     In response to requesting and utilizing FMLA leave, Plaintiff was subjected to a discriminatory/retaliatory hostile work environment, including but not limited to, unannounced evaluations, negative evaluations, pretextual discipline, rude, demeaning, and condescending treatment, threats of termination, accusatory meetings, and false/misleading information regarding her rights under the FMLA.

100.    Furthermore, in response to her complaints regarding retaliation under the FMLA and/or Defendants' FMLA violations, Plaintiff was subjected to a retaliatory hostile work environment, including but not limited to, pretextual discipline, rude, demeaning, and condescending treatment, threats of termination, accusatory meetings, and false/misleading information regarding her rights under the FMLA.

101.    Defendants committed interference and retaliation violations of the FMLA by *inter alia*:

    a.  Considering Plaintiff's FMLA intermittent leave/needs in making the decisions (1) issue her discipline; (2) give her a negative evaluation,; (3) place her on an Action Plan; and/or (4) ultimately terminate her employment;

    b.  Retaliating against Plaintiff for her requests and/or utilization of FMLA leave by: (1) issuing her discipline; (2) giving her a negative evaluation; (3) placing her on an Action Plan; and/r (4) ultimately terminating her employment;

    c.  Retaliating against Plaintiff for her complaints regarding FMLA retaliation and/or Defendants' FMLA violations by: (1) issuing her discipline; (2) giving her a

negative evaluation; (3) placing her on an Action Plan; and/r (4) ultimately

terminating her employment;[5]

d.   Intimidating Plaintiff in order to prevent her from using FMLA by (1) issuing her

discipline; (2) giving her a negative evaluation; (3) placing her on an Action Plan;

and/r (4) ultimately terminating her employment;

e.   Providing Plaintiff with false or misleading information about her rights under the

FMLA;

f.   Refusing Plaintiff's request to take FMLA in January of 2022 (discussed *supra*);

g.   Taking actions towards Plaintiff that would dissuade a reasonable person from

exercising her rights under the FMLA.

102.   Each individual Defendant named in this lawsuit is responsible for the aforesaid

interference and retaliation violations.[6]

103.   These actions as aforesaid constitute both interference and retaliation violations of

the FMLA.

## COUNT III
## First Amendment Retaliation (by and through 42 U.S.C. § 1983)
## - Against Defendant Individuals Only-

104.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

---

[5] "An employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act." 29 C.F.R. § 825.220(a)(2).

[6] It is well established that management employees of an employer are personally liable for violations of the FMLA. *See* 29 C.F.R. § 825.104(d). *see also Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012).

105.    Plaintiff engaged in protected activities under the First Amendment by having a political sign in the car she drove to work expressing concerns about Defendant McCooley's superintendency.

106.    Plaintiff's complaints were made as a concerned "citizen" about Defendant McCooley's ability to be Superintendent of Defendant District.

107.    Plaintiff was disciplined and ultimately terminated by Defendant Individuals for expressing concerns of public interest (*i.e.* Defendant McCooley's ability to be Superintendent of Defendant District) as a private citizen and thus was terminated in violation of the First Amendment.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: September 7, 2022